Earle S. Weller, Individually, and Estate of Lucile D. Weller, Deceased, Earle S. Weller, Administrator v. Commissioner.
Weller v. Commissioner
Docket No. 61475.
United States Tax Court
T.C. Memo 1959-128; 1959 Tax Ct. Memo LEXIS 120; 18 T.C.M. (CCH) 565; T.C.M. (RIA) 59128; June 23, 1959
*120 Held, that the principal petitioner was not, during the year 1952, engaged in a business of loaning money to business enterprises; and that losses which he incurred in said year, in respect of advances previously made to a doll manufacturing corporation, were not business losses, but were losses incurred in respect of worthless stock and nonbusiness bad debts, for which deductions are subject to the limitations provided in section 117(d)(2) and (e) of the 1939 Code. Joseph L. Wyatt, Jr., Esq., and Paul Thomas Guinn, Esq., for the petitioners. Cyrus A. Johnson, Esq., for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: Respondent determined *121 deficiencies in the income taxes of Earle S. Weller and his wife Lucile D. Weller, as follows: Year
Deficiency
1951
$4,907.52
1952
5,067.08
1953
5,466.00 The liability of Lucile resulted solely from her having filed joint income tax returns with her husband for said years. She died in the year 1958; and the administrator of her estate has been substituted as a petitioner. The issues for decision are: (1) Whether advancements totaling approximately $119,000, which petitioner Earle S. Weller made to a corporation during the years 1949 through 1952, and in respect of which his rights to recovery became wholly worthless in the latter year, represented equity investments, or loans; and (2) Assuming that part of said advancements represented loans to the corporation, whether the losses on such loans were incurred by Weller in the regular course of a business carried on by him for the loaning of money to business enterprises. The answer to this question will not only be determinative as to whether the losses on such loans are deductible without limitation as "business bad debts" of the year 1952, rather than "nonbusiness bad debts" within the meaning of section *122 23(k)(4) of the 1939 Code, in respect to which deductions are subject to the limitation provided in section 117(d)(2) of the 1939 Code; but also will be determinative as to whether Weller is entitled to a deduction for a net operating loss carryback for the year 1951, and to a deduction for a net operating loss carryforward for the year 1953. Findings of Fact Certain facts have been stipulated. The stipulation of facts, including the exhibits therein identified, is incorporated herein by reference. Petitioner Earle S. Weller (hereinafter called Weller) is a resident of Altadena, California. He and his wife filed a joint income tax return for the year 1951, with the collector of internal revenue for the sixth district of California; and also they filed a joint income tax return for each of the years 1952 and 1953 with the district director of internal revenue at Los Angeles, California. Prior to 1945, Weller was the owner and operator of ranches in Kern County, California, and was also the owner of various industrial properties. In said year he moved into the Los Angeles metropolitan area; and shortly thereafter, he inherited approximately $173,000 from his father, consisting *123 of cash, several city lots, and various parcels of business and industrial real estate. Thereafter, he devoted most of his time to renting and managing his real properties and to handling various personal corporate investments. In 1948, he became the local district agent for a national life insurance company; and thereafter he received income from the handling of such insurance business, and deducted on his income tax returns various expenses arising from such business. In the year 1948, one of Weller's industrial properties was rented by him to a partnership known as the Modern Doll Company of California, which was engaged in the manufacture of dolls. This partnership had, during said year, fallen behind in the payment of its rents; and Weller learned, after he conferred with the partners, that they were experiencing financial difficulty because of shortage of capital. He concluded however that the prospects for the business were favorable, and he therefore forebore any attempt to compel payment of the unpaid rents. Shortly thereafter, in May 1949, he loaned the partners $5,000 for the purchase of machinery. By June 1949, said partners were indebted to him in the amount of $6,100, *124 represented by $1,100 past due rentals and by his said loan of $5,000. In June 1949, Weller entered into an agreement with the two partners of said company, for incorporation of the business under the name of Modern Doll Company of California, Inc. The incorporation was effected under the laws of the State of California on July 6, 1949. Pursuant to the said preincorporation agreement, 150 shares of the common stock, having a total par value of $15,000, were issued to Weller in exchange for the following: Cancellation of the above-mentioned $6,100 owed to him by the prior partnership; forgiveness of $1,375 future rents on the property owned by him which the corporation was to occupy; and cash advanced in the amount of $7,525. At the same time, 300 other shares of common stock were issued to the two former partners, in exchange for the net assets of the predecessor partnership. Weller was one of the incorporators of said business; and in both of the years 1949 and 1951, he was designated in documents filed with the Corporation Department of California as vice-president, treasurer and a director. He personally, at no time, took any part in the management of the corporation's business. *125 Following said initial investment in said Doll corporation, Weller, during each of the years 1949 through 1952, made numerous cash advancements to the corporation; and also during said years, he acquired additional shares of common stock, together with numerous shares of preferred stock. At the end of the year 1950, he held a total of 300 shares of common stock, which represented two-thirds of the total of such shares outstanding; and at the end of the year 1951 he not only continued to hold a substantial portion of said common shares, but also 720 shares of preferred stock, which was the entire amount of such preferred stock outstanding. He acquired most of his shares of common stock in consideration for cash advances to the corporation; and he acquired most of his shares of the preferred stock in consideration for his cancellation of claims for advances previously made to the corporation. The record does not establish what consideration, if any, he received for various shares of common and preferred stock which he from time to time transferred to other persons. The books of the corporation show that, as of November 15, 1952, the amounts of common and preferred stock held by Weller, *126 and the amounts owing to Weller on loans, were as follows: Common stock
$ 34,600.00
Preferred stock
72,000.00
Loans
43,779.42
Total
$150,379.42 The parties have agreed, however, that said book figures are not susceptible of verification; and they have herein stipulated that the only portions of said amounts which have been substantiated, are: Common stock
$ 15,000.00
Preferred stock
65,500.00
Loans
39,324.91
Total
$119,824.91 All of such amounts originated in advances made by Weller to the corporation, as follows: No. of
Year
Advances
Amount
1949
10
$ 21,000.00
1950
8
17,254.91
1951
20
61,900.00
1952
12
19,670.00
50
$119,824.91
Weller at no time received repayment of any part of the above advances, except by delivery to him of the above-mentioned shares of common and preferred stock. Also, he at no time received any payment of interest on such advances. The corporation, Modern Doll Company of California, Inc., operated at a deficit in all years. The amounts of its deficits were as follows: Deficit for
Cumulative
Fiscal Period
Period
Deficit
6/15/49- 5/31/50
$26,020.37
$ 26,020.37
6/ 1/50- 1/31/51
15,015.98
41,036.35
2/ 1/51- 5/31/51
29,887.57
70,923.92
6/ 1/51-12/31/51
36,587.76
107,511.68
1/ 1/52- 5/31/52
18,832.36
126,344.04
6/ 1/52-11/ 7/52
51,889.60
178,233.64
*127 On November 7, 1952, said corporation made an assignment of its assets for the benefit of its creditors. Thereafter on January 29, 1953, Weller and others filed a petition in the United States District Court for the Southern District of California, to have the corporation declared a bankrupt. On March 4, 1953, the corporation was adjudicated a bankrupt. Weller received no distribution from the estate of the bankrupt. All of Weller's above-mentioned stock investments in the corporation and all of his above-mentioned loans to the corporation became wholly worthless in the year 1952. Most or all of the funds from which Weller made the above-mentioned advances to Modern Doll Company of California, Inc. were borrowed by him on his other assets. He maintained no office for the making of business loans; he had no employee or agent who was engaged in soliciting or handling loans; he did no advertising with respect to making loans; and there is no showing that he maintained any books of account for a money-lending business. The only portion of Weller's advances made to the Doll corporation which qualify as loans were in the amount of $39,324.91. The only other loans shown by the evidence *128 to have been made by Weller to any business, were: A loan of approximately $17,000 to a beverage company in 1947, most of which thereafter became worthless; and a loan of $25,000 to a novelty manufacturing company in 1953. None of Weller's losses in respect of the Doll corporation were incurred by him in the course of any business regularly carried on by him for the loaning of money to business enterprises. And none of such losses were either business losses or business bad debts. Opinion The principal questions here presented for decision are as above stated: (1) Whether advancements totaling approximately $119,000, which Weller made to the Modern Doll Company of California, Inc., and in respect of which his rights to recovery became wholly worthless in 1952, represented equity investments, or loans; and (2) assuming that part of these advances represented loans, whether the losses resulting from the same becoming worthless, were losses in respect of business bad debts, which are deductible without limitation under section 23(k)(1) of the 1939 Code, or were losses in respect of nonbusiness bad debts, which are to be considered as short-term capital losses under the provisions *129 of section 23(k)(4). All other issues raised by the pleadings have been eliminated by concessions made by the petitioners in their briefs. [1]
We shall here consider the above issues in reverse order; for, if it is here decided that Weller's losses in respect of the Doll corporation were not incurred by him in a business, *130 it here will make no difference taxwise whether such losses were incurred as equity investments in common and preferred stock which became worthless, or were sustained in respect of nonbusiness debts which became worthless. The reason for this is, that losses resulting from shares of stock becoming worthless are to be considered as capital losses, under section 23(g)(2) of the 1939 Code; that losses resulting from nonbusiness debts becoming worthless are to be considered as short-term capital losses, under section 23(k)(4); and that there is no dispute here, that the only deductions to which Weller would be entitled to capital losses under the above sections, are the limited deductions provided by section 117(d)(2) and (e) of the Code. Weller's primary contention is that his losses in respect of the Doll corporation were incurred in a business regularly carried on by him of loaning money to business enterprises. This contention, despite the difference in phraseology employed, is substantially equivalent to one frequently advanced: That a particular taxpayer was engaged in a business of promoting, financing, operating and making loans to business enterprises. See, for example, ; *131 ; and , reversing . This Court, in , affirmed per curiam (C.A. 3) , gave consideration to such a contention; and we there said: "The authority * * * [for allowing business deductions in so-called 'promoter' cases] is applicable only to the exceptional situations where the taxpayer's activities in promoting, financing, managing, and making loans to a number of corporations have been regarded as so extensive as to constitute a business separate and distinct from the business carried on by the corporations themselves. * * *" To the same effect, see , affd. (C.A. 4), ; , affd. (C.A. 10), ; and . See also the decision of the Court of Appeals for the Second Circuit in . It is well settled that whether a particular *132 loss or expense is incurred in a taxpayer's trade or business is a question of fact, to be determined from the facts and surrounding circumstances of the particular case. ; In the instant case, the evidence is clearly insufficient to establish that Weller, at any time and more particularly in the year 1952, was engaged in a business regularly carried on by him of loaning money to business enterprises. He had no business office for such purpose; he employed no agent or other person to solicit or to handle loans; he did not advertise that he was engaged in a money-lending business; and there is no proof that he maintained any books of account for such a business. Indeed, the evidence reveals, and we have heretofore found as a fact, that aside from his advances to said Doll corporation, he made only two relatively small loans to business concerns during the entire period from 1947 to 1953. There is no evidence that he at any time derived any income from the making of loans; or that he devoted any substantial portion of his time or effort to money lending; or that he at any time was a trader *133 in stocks, securities or obligations of business enterprises. We hold that Weller was at all times here material merely a passive and casual investor and lender; and that none of the losses which he sustained in 1952, in respect of his investments in, and his loans to, the Modern Doll Company of California, Inc., were incurred in any business carried on by him. As to the classification of Weller's said losses, we have heretofore pointed out that such classification will here have no effect taxwise, where it is decided (as we have decided above) that the losses were not incurred in a business operated by Weller. Nevertheless, with a view to completeness, we here hold that said losses consisted of the following: A capital loss of $15,000 on shares of common stock of the Doll corporation, which became worthless; a capital loss of $65,500 on shares of preferred stock of said corporation, which became worthless; and a nonbusiness bad debt of $39,324.91, arising from loans made to said corporation. The above-mentioned amount of capital loss on common stock has been conceded by petitioners; and both this, and the abovementioned amounts of the capital loss on preferred stock and of the *134 nonbusiness bad debt, reflect the book accounts of the Doll corporation to the extent that the same are susceptible of verification, as shown in our Findings of Fact. The respondent has, in his notice of deficiency, allowed a limited capital loss deduction of $1,000 for the year 1952, in accordance with the provisions of section 117(d)(2); and he also has allowed a capital loss carryover of $1,000 for the year 1953. He recognized no net operating loss for the year 1952; allowed no net operating loss carryback to 1951; and allowed no net operating loss carryforward to 1953. We approve all of such actions; and we also approve the amounts of the deficiencies which respondent determined for the several years involved. Decision will be entered for the respondent. Footnotes
1. The petitioners alleged in their amended petition herein, that the total amount of the losses sustained by Weller in 1952, was $150,379.42; that all of such amount is deductible as a business loss, under various sections of the Code; and that such loss resulted in a net operating loss for 1952, in respect of which a net operating loss carryback deduction is allowable for 1951, and a net operating loss carryforward deduction is allowable for 1953. However in petitioners' original and reply briefs herein, they have now conceded inability to prove that Weller's total losses in respect of the Doll corporation were more than $119,824.91; have conceded that $15,000 of said amount represents a capital loss on worthless common stock of said corporation; and have stated, as to the balance of $104,824.91, that the remaining issues are substantially as stated above.↩